Jeremy A. Moseley (#44830177)
Hannah S. McCalla (#42358613)
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone:  303.839.3800
Facsimile: 303.839.3741
Email:      jmoseley@spencerfane.com
            hmccalla@spencerfane.com

*Attorneys for Defendant USAA General Indemnity Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| DAVID and KATJA STREETER, | Case No. 9:20-cv-00188-DLC-KLD |
| Plaintiffs, | |
| v. | **USAA GENERAL INDEMNITY COMPANY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| USAA GENERAL INDEMNITY COMPANY and JOHN DOES 1-10, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................. **Error! Bookmark not defined.**

INTRODUCTION .............................................................................1

LEGAL STANDARD .......................................................................3

ARGUMENT....................................................................................4

I.     PLAINTIFFS' NONCOMPLIANCE WITH USAA GIC'S REQUESTS FOR CRITICAL INFORMATION VIOLATES THE INSURANCE POLICY, VITIATES COVERAGE, AND DISPOSES OF ALL CLAIMS...4

    A.    Plaintiffs' Noncooperation Is a Material Breach of the Insurance Contract .............................................................................5

    B.    Plaintiffs' Noncooperation Caused Prejudice to USAA GIC and Precludes Recovery.........................................................10

II.    PLAINTIFFS' VIOLATION OF THE POLICY IS FATAL TO ALL OF THEIR CLAIMS ....................................................................13

III.   PLAINTIFFS' "INABILITY-TO-REBUILD" CLAIM FAILS AS A MATTER OF LAW..................................................................14

IV.   PLAINTIFFS' CLAIMS FOR OTHER UTPA VIOLATIONS AND DECLARATORY JUDGMENT ALSO FAIL............................................16

CONCLUSION ..............................................................................20

CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(d)(2).................................21

CERTIFICATE OF SERVICE (CM/ECF)..........................................................22

i

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Byorth v. USAA Cas. Ins. Co.*,
    2019 WL 6715970 (D. Mont. Dec. 10, 2019)..................................................18

*Contractors Bonding and Ins. Co. v. Sandrock*,
    321 F. Supp. 3d 1205 (D. Mont. 2018)..............................................................7

*Drange v. Mountain W. Farm Bureau Mut. Ins. Co.*,
    No. CV 20-30-BLG-SPW, 2020 WL 4430507 (D. Mont. July 31,
    2020) ..........................................................................................................18

*EOTT Energy Operating Ltd. P'ship v. Certain Underwriters at
    Lloyd's of London*,
    59 F. Supp. 2d 1072 (D. Mont. 1999).............................................................13

*Farmer v. Allstate Ins. Co.*,
    396 F. Supp. 2d 1379 (N.D. Ga. 2005).......................................................5, 6, 7

*Feller v. First Interstate Bancsystem, Inc.*,
    299 P.3d 338 (Mont. 2013) ...........................................................................14

*Garner v. USAA Gen. Indem. Co.*,
    2019 WL 3306135 (D. Mont. July 23, 2019) ..................................................18

*Good v. Skifstad*,
    CV 18-80-BU-BMM, 2019 WL 2453111 (D. Mont. June 12, 2019)...............11

*Hall v. Allstate Fire and Cas. Ins. Co.*,
    20 F.4th 1319 (10th Cir. 2021).......................................................... 6, 7, 11, 12

*Holland v. State Farm Mut. Auto. Ins. Co.*,
    No. 2:12-cv-01058-LDG-GWF, 2014 WL 1268712 (D. Nev. Mar.
    27, 2014)...................................................................................................6, 7

*Mlekush v. Farmers Ins. Exch.*,
    404 P.3d 704 (Mont. 2017) ...........................................................................14

*Moe v. GEICO Indem. Co.*,
    2020 WL 3396872 (D. Mont. June 19, 2020)..................................................18

*Moe v. GEICO Indem. Co.*,
    CV 19-23-BU-BMM-JCL, 2019 WL 5682511 (D. Mont. Jul. 25,
    2019) ...................................................................................................19

*Peschel v. City of Missoula*,
    686 F. Supp. 2d. 1107 (D. Mont. 2009)................................................3

*Seymour v. Safeco Ins. Co. of Illinois*,
    CV 13-49-BU-DLC-RWA, 2014 WL 12545877 (D. Mont. July 24,
    2014) .......................................................5, 7, 10, 11, 12, 13, 14

*Steadele v. Colony Ins. Co.*,
    260 P.3d 145 (Mont. 2011) ..................................................................7

*Tran v. State Farm Fire and Cas. Co.*,
    961 P.2d 358 (Wash. 1998).............................................. 5, 7, 10, 11, 12

*Truck Ins. Exch. v. Waller*,
    828 P.2d 1384 (Mont. 1992) .............................................................13

*Woodman v. Standard Ins. Co.*,
    CV 20-153-M-KLD, 2021 WL 927373 (D. Mont. Mar. 11, 2021) .............17, 18

**Statutes**

Mont. Code Ann. § 33-18-201 subsections (1), (4), (5), (6), (9), and
    (13) .....................................................................................................17

Mont. Code Ann. § 33-18-232 .............................................................19

Mont. Code Ann. § 33-18-232(3)..........................................................19

Mont. Code Ann. § 33-18-242(1)..........................................................17

Mont. Code Ann. § 33-18-242(3).................................................16, 18

**Rules**

Fed. R. Civ. P. 56 (c) ...........................................................................3

USAA General Indemnity Company ("USAA GIC") files this brief in support of its motion for summary judgment.

## **INTRODUCTION**

In this first-party insurance case, Plaintiffs David and Katja Streeter violated the terms of their homeowners insurance policy in order to obtain over half a million dollars in benefits for a series of house fires—Plaintiffs' second total loss resulting from a series of house fires—that law enforcement deemed a "clear cut case of arson." Pursuant to the insurance policy's cooperation and record-disclosure provisions, USAA GIC requested Plaintiffs' cell phone data to investigate the cause of the suspicious fires. In response, Plaintiffs drafted an authorization to limit USAA GIC's access to electronic evidence and then, shortly after USAA GIC requested an expanded scope to look for evidence of "data hiding" based on inconsistencies in the records, revoked the authorization entirely. The previously concealed information, which USAA GIC first obtained in litigation, reveals that information was deleted from Plaintiffs' cell phones, according to unrebutted forensic-analysis expert opinion. By concealing and withholding this material information until after they filed suit, Plaintiffs precluded USAA GIC from discovering this evidence during its pre-litigation claim investigation, and before it paid what it has now determined was a loss intentionally caused by Plaintiffs.

1

Plaintiffs' noncompliance is fatal to all causes of action in this lawsuit. The undisputed material facts establish that (i) Plaintiffs violated the insurance contract by concealing and withholding electronic data that USAA GIC requested to investigate the claim, and (ii) Plaintiffs' conduct caused USAA GIC prejudice by impairing its ability to investigate the validity of the claim in real time, and before issuing payment. Plaintiffs' breaches of the Policy vitiate coverage and, because Plaintiffs are not entitled to coverage, the remaining claims fail as a matter of law.

Moreover, several of Plaintiffs' causes of action fail for additional and independent reasons. First, Plaintiffs' claim that the timing of USAA GIC's dwelling payment "resulted in Streeters being unable to timely rebuild their home" and the "loss of the additional rebuilding expense provisions of their policy" fails as a matter of law under the terms of the Policy. Plaintiffs had two years from the date of loss (until July 2021) to rebuild and recover an additional 25% of the dwelling coverage limit, but simply chose to move to a new neighborhood after receiving payment in February 2020. Second, Plaintiffs' claims for alleged UTPA violations "not arising from § 33-18-242" and for declaratory judgment fail because those claims are precluded under the UTPA. In sum, the Court should dismiss this case with prejudice.

## **LEGAL STANDARD**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). "An issue of fact is 'genuine' if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Peschel v. City of Missoula*, 686 F. Supp. 2d. 1107, 1115-16 (D. Mont. 2009) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986). "A fact is 'material' if it may affect the outcome of the case." *Id.* at 1116.

A defendant moving for summary judgment "must produce evidence which either: (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial." *Id.* at 1115. The burden then shifts to the non-moving party, who must "go beyond the pleadings" and cite "specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A party opposing summary judgment cannot rely on assertions of "some metaphysical doubt," but must "identify evidence establishing that a dispute as to a particular material fact is genuine." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**ARGUMENT**

I.   **PLAINTIFFS' NONCOMPLIANCE WITH USAA GIC'S REQUESTS FOR CRITICAL INFORMATION VIOLATES THE INSURANCE POLICY, VITIATES COVERAGE, AND DISPOSES OF ALL CLAIMS**

Plaintiffs bring claims for breach of contract, violation of the UTPA, declaratory judgment, and for punitive damages, attorney fees, and costs. (*See generally* Compl. (Doc. 33).) USAA GIC asserts in defense that Plaintiffs' claims are "barred by their failure to comply with" the "conditions precedent to recovery" including "the duty to cooperate under the policy." (USAA GIC's Defenses ¶ 6 (Doc. 34).)[1] Specifically, the Policy requires Plaintiffs "cooperate with" USAA GIC in its investigation of claims, and provide access to "records and documents" that USAA GIC requests. (USAA GIC's Statement of Undisputed Facts ¶ 3 ("Facts"), filed herewith.) By refusing to cooperate with USAA GIC's request for electronic records to investigate the claim, Plaintiffs breached these provisions and prejudiced USAA GIC's investigation of the claim. Once obtained in litigation, the electronic evidence proved that information from around the time of the fires had been deleted from Plaintiffs' cell phones. Plaintiffs' undisputed breaches of essential duties under the Policy vitiate coverage and are fatal to all claims.

_____

[1] USAA GIC has filed a motion for leave to file an amended answer to assert additional defenses based on the evidence it was precluded from discovering until litigation by Plaintiffs' failure to comply with the Policy, which is fully briefed and pending. (*See* Doc. 50.)

A.    **Plaintiffs' Noncooperation Is a Material Breach of the Insurance Contract**

Where an insured has "failed to cooperate with [the insurer] in handling the claim" for which it later files suit, that failure "precludes any … recovery under the Policy."[2] *Seymour v. Safeco Ins. Co. of Illinois*, CV 13-49-BU-DLC-RWA, 2014 WL 12545877, at *8 (D. Mont. July 24, 2014), *report and recommendation adopted*, 2015 WL 12591708 (D. Mont. May 13, 2015). Accordingly, the insurer in *Seymour* was entitled to summary judgment on its uncooperative insured's claim for a larger hail-damage payment, where "it was incumbent upon [the insured] to secure a written estimate of damages," but "instead of securing a written estimate in compliance with the Policy, the [insured] commenced … litigation." *Id.* at *6-7.

Other courts have held the same. *See Farmer v. Allstate Ins. Co.*, 396 F. Supp. 2d 1379, 1383 (N.D. Ga. 2005) (granting summary judgment because insured refused to provide requested information that was material to the insurer's arson investigation); *Tran v. State Farm Fire and Cas. Co.*, 961 P.2d 358, 363-64 (Wash. 1998) (reinstating the trial court's order granting summary judgment to insurer on the basis the insured failed to provide documents relevant and material to the

---

[2] In *Seymour*, the failure to cooperate precluded "any additional recovery" because the noncooperation at issue concerned the insured's failure to provide documentation "in support of their claim of additional loss." *Seymour*, *supra* at *8. Here, the noncooperation at issue pertains to the entire claim.

insurer's investigation of suspicious claim); *Hall v. Allstate Fire and Cas. Ins. Co.*, 20 F.4th 1319 (10th Cir. 2021) (affirming summary judgment on failure to cooperate where insured refused to provide material documents requested by the insurer until litigation); *Holland v. State Farm Mut. Auto. Ins. Co.*, No. 2:12-cv-01058-LDG-GWF, 2014 WL 1268712, *3-5 (D. Nev. Mar. 27, 2014) (granting summary judgment to insurer because plaintiff "refused to provide" authorizations necessary to allow insurer "to investigate and evaluate [insured's] pre-existing medical history in order to determine whether his claimed injuries were attributable to the accident" prior to litigation).

*Farmer* involved a suspicious fire loss. When "Allstate began an investigation into the claim and discovered facts indicating that the claim was suspicious and fraudulent," it requested the insured "produce specific documentation and information." 396 F. Supp. 2d at 1380. Allstate requested tax returns, business and personal financial records, cell phone records, as well as information regarding the plaintiff's recent divorce proceeding during its investigation of the claim. *Id.* at 1381. The plaintiff refused to provide the documents and information, claiming they were not relevant and unnecessarily intrusive. *Id.* at 1382. The court entered summary judgment for Allstate, finding that the plaintiff's refusal to provide the information was a breach of the cooperation clause and there was insufficient justification for her refusal. *Id.* at 1383. The result should be the same here.

While the Montana Supreme Court appears to have not specifically addressed cooperation clauses in the context of an insured that refuses to cooperate in a claim investigation, the Court has enforced notice provisions as a condition precedent to liability coverage, under similar rationale. *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 150 (Mont. 2011). In *Steadele*, the insureds' failure to notify their insurer of the lawsuit until after a default judgment had been entered relieved the insurer of its duty to indemnify, because it was prejudiced in its ability to investigate the claim and participate in the litigation. *Id.* at 151. The rationale underlying a notice requirement is the same rationale underlying a requirement that the insured cooperate in the investigation of a claim. That is, an insurer suffers prejudice when the failure to cooperate precludes the insurer's reasonable investigation. *See also Contractors Bonding and Ins. Co. v. Sandrock*, 321 F. Supp. 3d 1205, 1211-12 (D. Mont. 2018) (granting summary judgment because insured's failure to provide timely notice "prevented any opportunity to investigate the facts" and materially prejudiced the insurer).

Here, as in *Seymour*, *Farmer*, *Tran*, *Hall*, and *Holland*, Plaintiffs' noncooperation constitutes a material breach of contract. The Policy requires Plaintiffs "cooperate with" USAA GIC in its investigation of claims, and provide access to "records and documents" that USAA GIC requests. (Facts ¶ 3.) To that end, USAA GIC requested data pulls of Plaintiffs' cell phones to be completed by

7

OneSource Discovery ("OneSource"). (*Id.* ¶ 4.) When Plaintiffs met with the OneSource technician on August 1, 2019, they presented an authorization that limited the data from their cell phones that USAA GIC could access. (*Id.* ¶ 5.) On August 7, 2019, USAA GIC wrote to Plaintiffs explaining that it "has requested your cooperation with obtaining electronically stored information from your electronic devices." (*Id.* ¶ 6.) USAA GIC agreed to only request the file types authorized by Plaintiffs, "with the stipulation that USAA GIC may request access to additional files and/or data at a future time if it deems necessary to do so in furtherance of the investigation." (*Id.* ¶ 7.)

While it had access to the data, USAA GIC discovered, and OneSource confirmed, that there were no calls appearing on Mr. Streeter's cell-phone data from July 10, 2019 to July 12, 2019—the days of the fires. (*Id.* ¶ 8.) The absence of calls for that timeframe was inconsistent with the Verizon Wireless call logs for Mr. Streeter's cell phone number. (*Id.* ¶ 9.) Thus, on August 19, 2019, USAA GIC requested an expanded scope, including to "[e]xamine for any and all indicators of factory resets, data hiding or similar." (*Id.* ¶ 10.) Plaintiffs did not cooperate fully with this request—Plaintiffs authorized USAA GIC to review communications from the week of July 8, 2019 to July 15, 2019 and voicemail only. (*Id.* ¶ 11.) Plaintiffs did <u>not</u> authorize USAA GIC to examine for any and all indicators of factory resets, data hiding, or similar, as requested. (*Id.* ¶ 12.) On August 26, 2019, Plaintiffs

suspended the right for OneSource to share any further information from the data pulls with USAA GIC. (*Id.* ¶ 13.) Plaintiffs did not authorize USAA GIC to access the data again prior to this lawsuit. (*Id.* ¶ 14.)

In light of the foregoing, no reasonable juror could conclude that Plaintiffs cooperated in compliance with the Policy with USAA GIC's request for electronic records. USAA GIC informed Plaintiffs it was requesting their cooperation to obtain their electronically stored information, but Plaintiffs limited and then eliminated USAA GIC's ability to review that evidence. USAA GIC had only 19 days to review the limited data Plaintiffs made available in connection with the other pieces of its investigation. At that time, USAA GIC did not even have the sheriff's office investigative report. When USAA GIC discovered inconsistencies and requested an expanded scope to investigate them, Plaintiffs—in a calculated written response— omitted any authorization for USAA GIC to review for evidence of "data hiding."

The electronic evidence USAA GIC was precluded from evaluating during the claim is unquestionably material, as demonstrated by the conclusions reached during litigation after USAA GIC continued its investigation and was able to review that information. Review of the complete electronic evidence led to the discovery that there were no text messages between Mr. Streeter and his son-in-law Austin Osmus—the second person he called around 1:45 a.m. when the second fire was underway—from before July 13, 2019. This led to questioning of Mr. Streeter at

deposition in March 2022 as to whether he deleted any text messages, to which he admitted for the first time that he may have deleted a text message he received that morning from Mr. Osmus about the hotel "pool" or "hot tub." (*Id.* ¶ 16.) Mr. Osmus, however, testified at his deposition that he believes his 1:45-a.m. text to Mr. Streeter said "call me." (*Id.* ¶ 17.) This evidence, and the additional investigation that has been conducted because of it, led origin-and-cause expert Lonnie Larson to ultimately conclude "it is more likely than not Mr. Streeter started the July 11, 2019 fire intentionally and worked with someone who is familiar with the property to intentionally set the July 12, 2019 fire in order to destroy the property." (*See* Doc. 51 at 5-12 (detailing USAA GIC's additional investigation and new evidence discovered in litigation).) Plaintiffs' failure to cooperate is a breach of the Policy as a matter of law. *Tran*, 961 P.2d at 365.

### B.     Plaintiffs' Noncooperation Caused Prejudice to USAA GIC and Precludes Recovery

An insured's failure to provide records requested by the insurer impairs an insurer's ability to conduct a legitimate claim investigation to determine the validity of a claim and causes prejudice as a matter of law. As this Court held in *Seymour*, insurers "suffer prejudice" when they are "inhibited in their effort to process claims due to the uncooperativeness of the insured," because that uncooperativeness "prevents the insurer from completing a legitimate investigation to determine whether it should provide coverage." *Seymour, supra* at *8 (quoting *Herman v.*

10

*Safeco Ins. Co. of Am.*, 17 P.3d 631, 634-635 (Wash. App. Div. 2 2001); *see also Good v. Skifstad*, CV 18-80-BU-BMM, 2019 WL 2453111, at *4 (D. Mont. June 12, 2019) (holding in the context of the IME requirement that a <u>material</u> breach of the insurance contract allows the insurer "to rescind the contract"). In *Tran*, the court explained,

> [T]he business of insurance companies is, after all, to provide coverage for the legitimate claims of the parties it insures. If insurers are inhibited in their effort to process claims due to the uncooperativeness of the insured, they suffer prejudice because the insured's intransigence prevents the insurer from completing a legitimate investigation to determine whether it should provide coverage.

*Tran*, 961 P.2d at 366. It follows that "the standard to establish a material and substantial disadvantage is whether an insured's conduct prevented a reasonable investigation under the circumstances, not whether an insurer's investigation was rendered impossible." *Hall*, 20 F.4th at 1324. Prejudice exists where an insured's failure to provide material information that is reasonably requested puts the insurer "in the untenable position of either denying coverage or paying the claim without the means to investigate its validity." *Id.* (citation omitted). When the noncooperation precludes the insurer from completing its investigation of the claim, prejudice exists as a matter of law. *Seymour, supra* at *8 (holding insurer "was prejudiced as a matter of law" by insured's lack of cooperation). Prejudice is even more acute where, as here, an insurer pays the claim absent material and relevant

11

information it requested. *See Tran*, 961 P.2d at 366 (observing potential for prejudice when insurer makes a claim payment despite insured's noncooperation).

Plaintiffs' noncooperation caused even greater prejudice to USAA GIC than the prejudice identified in *Seymour*, *Tran*, and *Hall*. Not only did Plaintiffs' noncompliance preclude a critical portion of USAA GIC's investigation, but it culminated in payment of over $600,000 to Plaintiffs for what USAA GIC has now determined was a loss intentionally caused by Plaintiffs. (*See* Facts ¶ 15.) Even more, now that USAA GIC has done the investigation it would have been able to do in 2019, had Plaintiffs complied, Plaintiffs are attempting to hide from the jury what they hid from USAA GIC by improperly invoking the "no hindsight" rule to prevent USAA GIC's defenses premised on Plaintiffs' intentional acts. (*See* Pls.' Opp'n to USAA GIC's Mot. for Leave to Amend (Doc. 52).)

It is undisputed that Plaintiffs' undisputed failure to cooperate with USAA GIC's investigation impaired USAA GIC's ability to investigate the validity of the claim in real time, and before issuing payment. And, as shown by the defenses USAA GIC requests leave to assert, the electronic evidence would have significantly altered USAA GIC's claims handling and payment decisions, had proper disclosure occurred. Plaintiffs' failure to cooperate vitiates coverage as a matter of law. *Seymour*, *supra* at *8. Thus, summary judgment should be granted for USAA GIC on Plaintiffs' contract claim.

12

## II.    PLAINTIFFS' VIOLATION OF THE POLICY IS FATAL TO ALL OF THEIR CLAIMS

Because Plaintiffs' breaches void coverage, they also entitle USAA GIC to summary judgment on Plaintiffs' UTPA and other claims. Under Montana law, "where there is no coverage, there is no bad faith." *EOTT Energy Operating Ltd. P'ship v. Certain Underwriters at Lloyd's of London*, 59 F. Supp. 2d 1072, 1076 (D. Mont. 1999) (citing *Truck Ins. Exch. v. Waller*, 828 P.2d 1384, 1388 (Mont. 1992). In granting the plaintiff's motion to exclude evidence discovered in litigation on a UTPA claim, the court in *EOTT* explained, had the defendants shown on summary judgment that "Plaintiff had made a false claim, this Court would have found that there was no coverage," and, therefore, "no bad faith." *Id.*

Other cases have held the same. In *Waller*, the Montana Supreme Court affirmed summary judgment in favor of the insurer seeking a declaration that there was no coverage for an airplane accident based on the policy's aircraft exclusion. 828 P.2d at 1386. Determining that the bad faith claim was "premised upon the existence of . . . coverage for the airplane accident," and "[b]ecause the policies excluded coverage," the Montana Supreme Court held the "claims of bad faith . . . fail[ed] as a matter of law." *Id.* at 1388. In *Seymour*, this Court granted summary judgment on the plaintiffs' UTPA claim, reasoning that the plaintiffs had "violated the cooperation clause" and "were unable to establish that they were entitled to additional payments," so they could not "prove damages resulting from Defendant's

13

handling of the insurance claim." *Seymour*, 2015 WL 12591708, at *2-3. That situation exists here.

Absent coverage, Plaintiffs' claims for punitive damages, attorney fees, and declaratory judgment fail too. "It is axiomatic that one cannot recover punitive damages in a cause of action unless she first recovers compensatory damages." *Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 344 (Mont. 2013). Absent a viable individual claim for relief, which there is none, summary judgment on the punitive damages claim must be granted. (Compl. ¶ 63 (Doc. 33).) Plaintiffs' claims for attorney fees and costs fail for the same reason. (*Id.* at ¶¶ 65-71.) Those claims are premised on Plaintiffs' recovery of contractual benefits by way of litigation under Montana's insurance exception to the American Rule on attorney fees, which is unavailable absent a contractual recovery. *See Mlekush v. Farmers Ins. Exch.*, 404 P.3d 704, 706-08 (Mont. 2017). Finally, Plaintiffs' claim for declaratory judgment is premised on "coverage issues associated with the [Streeter's] policy of insurance" related to USAA GIC's handling of the claim. (Compl. ¶ 76.) Plaintiffs' material breaches void coverage and require dismissal of this claim.

## III. PLAINTIFFS' "INABILITY-TO-REBUILD" CLAIM FAILS AS A MATTER OF LAW

Under the Policy, Plaintiffs had until July 2021 to rebuild their house or, during that timeframe, request an additional 180 days to rebuild. Plaintiffs, however, allege that the timing of USAA GIC's dwelling coverage payment, which was made

14

in February 2020, "resulted in Streeters being unable to timely rebuild their home" and the "loss of the additional rebuilding expense provisions of their policy." (Compl. ¶ 61 (Doc. 33).) Plaintiffs seek damages for alleged "inability to rebuild the structure because of the delays in payment of the stated value[] and acceptance of the claim." (Ex. L, Pls.' First Supp. Answer to USAA GIC's Interrog. No. 4, p. 2.) These claims fail because, pursuant to the terms of the Policy, the timing of USAA GIC dwelling payment did not impact Plaintiffs' ability to rebuild or recover additional rebuilding expenses.

The Policy's Special Loss Settlement endorsement provides for additional Coverage A – Dwelling Protection payments when an insured completes "the actual repair or replacement of the dwelling . . . within two years of the date of loss." (Facts ¶ 18.) This period can be "extended for an additional 180 days" if requested by the insured "during this period." (*Id.*) The Policy's Home Protector Coverage "will pay up to an additional 25% of the amount of insurance applying to the damaged building" if, "as a result of a covered loss, you have exhausted the amount of insurance." (*Id.* ¶ 19.) Twenty-five percent of $395,000 is $98,750, for a total of $493,750 available to Plaintiffs for rebuilding, subject to the terms of the Policy.

USAA GIC issued a dwelling payment to Plaintiffs for $395,000 on February 18, 2020. (*Id.* ¶ 23.) Plaintiffs assert they wanted to rebuild the same house in the same location after the fire loss. (*Id.* ¶ 20.) At the time of payment, Plaintiffs had 17

15

months remaining under the Policy's Special Loss Settlement endorsement to rebuild their house and recover additional Coverage A – Dwelling Protection payments. Further, under the Policy, Plaintiffs could have requested an additional 180 days to rebuild—extending the timeframe to January 8, 2022. Plaintiffs did not request that USAA GIC extend the timeframe in which to rebuild their house. (*Id.* ¶ 24.) Mr. Streeter did not find any contractors who were available to rebuild in 2019. (*Id.* ¶ 21.) And he never even looked into hiring anybody to rebuild the house after that. (*Id.* ¶ 22.)

Plaintiffs <u>chose</u> to move to a different house instead of looking for any contractors in 2020 or 2021 after USAA GIC issued the dwelling payment. The timing of USAA GIC's payment did not prevent Plaintiffs from rebuilding. Plaintiffs had at least 17 months after payment was issued to rebuild and trigger the additional Home Protector Coverage. Thus, any claim premised on USAA GIC causing Plaintiffs' "inability to rebuild" fails as a matter of law under the Policy.

## IV.   PLAINTIFFS' CLAIMS FOR OTHER UTPA VIOLATIONS AND DECLARATORY JUDGMENT ALSO FAIL

Plaintiffs' claims for alleged UTPA violations "not arising from § 33-18-242" (Count II) and for declaratory judgment (Count VII) fail for additional and independent reasons. The UTPA governs the claims brought by "[a]n insured who has suffered damages as a result of the handling of an insurance claim[.]" Mont.

16

Code Ann. § 33-18-242(3). Premised on USAA GIC's claim handling and claim decisions, Counts II and VII fail as a matter of law under that act.

First, the UTPA claim for alleged violations of duties for "non-242 claims, including 33-18-201(2) and (14)" is not actionable by Plaintiffs. Section 33-18-242(1) limits a private plaintiff's UTPA claim to violation of subsections (1), (4), (5), (6), (9), and (13) of Mont. Code Ann. § 33-18-201. Here, Plaintiffs' UTPA claim for alleged violation of subsections 33-18-201(2) and (14), or any other "non-242 claims" as alleged in the complaint, exceeds the limited private right of action they can bring. *Woodman v. Standard Ins. Co.*, CV 20-153-M-KLD, 2021 WL 927373, at *5 (D. Mont. Mar. 11, 2021) ("Woodman cannot assert private causes of action that are not recognized under the UTPA"). Plaintiffs' UTPA claim under these non-actionable subsections of the UTPA should be dismissed.

Second, Plaintiffs' declaratory claim fails because it seeks a remedy that is both unavailable under the UTPA and duplicative of the relief sought under Plaintiffs' other claims. "An insured . . . has an independent cause of action against an insurer for <u>actual damages</u> caused by the insurer's violation" of the UTPA's actionable subsections. Mont. Code Ann. § 33-18-242(1) (emphasis added). The act expressly limits the causes of action available to an insured who alleges such harm: the insured may "bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause

of action." Mont. Code Ann. § 33-18-242(3). "Pursuant to the UTPA's plain language, this Court has found declaratory relief to be an unavailable cause of action for statutory bad faith violations. *Garner v. USAA Gen. Indem. Co.*, 2019 WL 3306135, *5 (D. Mont. July 23, 2019); *Moe v. GEICO Indem. Co.*, 2020 WL 3396872, *4 (D. Mont. June 19, 2020); *Byorth v. USAA Cas. Ins. Co.*, 2019 WL 6715970, *2-5 (D. Mont. Dec. 10, 2019)." *Woodman*, 2021 WL 927373, at *2; *see also Drange v. Mountain W. Farm Bureau Mut. Ins. Co.*, No. CV 20-30-BLG-SPW, 2020 WL 4430507, at *2-3 (D. Mont. July 31, 2020) (reasoning under *Byorth* that claim for "declaratory and injunctive relief" related to claim-handling practice is barred under the UTPA).

Here, the substance of Plaintiffs' declaratory claim is USAA GIC's claim handling, specifically whether payment was timely and appropriate. (Compl. ¶¶ 72-81 (Doc. 33).) These are claim-handling issues for which declaratory relief is unavailable as a cause of action or a remedy under the UTPA. Further, even if Plaintiffs' allegations did not implicate the UTPA, the declaratory claim fails because it is duplicative of Plaintiffs' UTPA and breach-of-contract claims. Plaintiffs' request for a declaration that USAA GIC was obligated "to timely pay the stated value of the total loss of Plaintiffs' claim" and "the personal property up to the policy limits" is duplicative of the breach-of-contract claim premised on a failure "to automatically and timely pay the stated value" and for "all personal property lost

up to the limits of coverage." (*Id.* ¶¶ 58-59.) Plaintiffs also attack the timeliness of USAA GIC's payment in their UTPA claim. (*Id.* ¶¶ 49-51 (citing Mont. Code Ann. § 33-18-201(1), (4), (5), (6), and (13)). The declaratory claim for attorney fees "for being forced to assume the burden of legal action" is duplicative of the attorney fees allowed under the insurance exception for the breach-of-contract claim. Because Plaintiffs have the same remedies available under their breach-of-contract and UTPA claims, the claim for declaratory relief is duplicative and should be dismissed. *See Moe v. GEICO Indem. Co.*, CV 19-23-BU-BMM-JCL, 2019 WL 5682511, at *5 (D. Mont. Jul. 25, 2019) (concluding plaintiff's request for declaratory relief that GEICO violated Montana law in handling his liability claim was "duplicative of his bad faith claims and wholly superfluous. The declaratory relief sought would serve no practical purpose beyond the remedies available under the UTPA, which means this claim is subject to dismissal.").

Finally, the request for a declaration that USAA GIC had a "duty to pay or deny a claim within 30 days" under Mont. Code Ann. § 33-18-232 is not actionable under that statute, which states that a private cause of action "may not be based on the compliance or noncompliance with the requirements of this section and evidence of compliance or noncompliance with this section is not admissible in any private action based on 33-18-201 or 33-18-242." Mont. Code Ann. § 33-18-232(3). On these bases, the declaratory claim fails as a matter of law.

## <u>CONCLUSION</u>

For these reasons, the Court should grant summary judgment for USAA GIC and dismiss Plaintiffs' claims with prejudice.

Dated:  July 15, 2022                    Respectfully submitted,


                                         */s/ Hannah S. McCalla*
                                         Jeremy A. Moseley (#44830177)
                                         Hannah S. McCalla (#42358613)
                                         Spencer Fane LLP
                                         1700 Lincoln Street, Suite 2000
                                         Denver, Colorado 80203
                                         Telephone:  303.839.3800
                                         Facsimile: 303.839.3741
                                         Email:      jmoseley@spencerfane.com
                                                     hmccalla@spencerfane.com

                                         Attorneys for Defendant USAA General
                                         Indemnity Company

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(D)(2)</u>

Pursuant to Local Rule 7.1(d)(2), USAA General Indemnity Company certifies its compliance with the rule. This brief contains 4,654 words, excluding the caption and this certificate of compliance.

Dated:  July 15, 2022                              Respectfully submitted,


*/s/ Hannah S. McCalla*
Jeremy A. Moseley (#44830177)
Hannah S. McCalla (#42358613)
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, Colorado  80203
Telephone:   303.839.3800
Facsimile:         303.839.3838
Email:    jmoseley@spencerfane.com
             hmccalla@spencerfane.com

Attorneys for Defendant USAA General
Indemnity Company

21

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on July 15, 2022, I electronically filed the foregoing **USAA GENERAL INDEMNITY COMPANY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Lon J. Dale**
  lon@bigskylawyers.com,crystal@bigskylawyers.com, ab@bigskylawyers.com

- **Jenna P. Lyons**
  lyons@westernmontanalaw.com,johnson@westernmontanalaw.com

- **Jeremy A. Moseley**
  jmoseley@spencerfane.com,kkern@spencerfane.com

- **Hannah S. McCalla**
  hmcalla@spencerfane.com,kkern@spencerfane.com

- **Michael P. Sherwood**
  msherwood@bigskylawyers.com,crystal@bigskylawyers.com

*/s/ Hannah S. McCalla*

DN 6927352.3