Michael P. Sherwood, Esq.
Lon J. Dale, Esq.
MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
620 High Park Way
PO Box 4947
Missoula, Montana 59806-4947
Telephone: (406) 728-1455
Fax No: (406) 549-7077
msherwood@bigskylawyers.com; lon@bigskylawyers.com

Jenna P. Lyons, Esq.
REEP, BELL & JASPER, P.C.
PO Box 16960
Missoula, MT 59808-6960
Telephone (406) 541-4100
Fax No: (406) 541-4101
lyons@westernmontanalaw.com
     *Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DAVID and KATJA STREETER,<br><br>    Plaintiffs,<br><br>-vs-<br><br>USAA GENERAL INDEMNITY COMPANY, and JOHN DOES 1-10,<br><br>    Defendants. | Cause No. CV 20-188-M-DLC-KLD<br><br>**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON USAA GIC'S OBLIGATION AND FAILURE TO TIMELY PAY STATED VALUE** |

COMES NOW the Plaintiffs, David and Katja Streeter (the "Streeters"), by and through undersigned counsel of record, and hereby respectfully submit this Memorandum in Support of their Motion for Partial Summary Judgment. Summary judgment in favor of Plaintiffs is now appropriate as to the contractual obligation and resulting failure of USAA General Indemnity Company ("USAA GIC") to timely pay the stated value of the Streeters dwelling loss, as required by Mont. Code Ann. § 33-24-102.

**I.     INTRODUCTION**

The Streeters suffered a fire loss in July of 2019 which resulted in their home being a total loss, along with most of their personal possessions. At the time of the loss the Streeters were insured by USAA GIC Policy No. 03607 86 80 90A. USAA GIC does not dispute that the Streeters were properly insured at the time of loss, or that the fire resulted in the total loss of their home. The homeowner's policy set forth a "stated value" of $395,000.00 for the insured dwelling.

From the date of the fire loss, until February 18, 2020, USAA GIC did not make any indemnity payments for the home improvements either to the Streeters or to LoanCare, LLC ("LoanCare"), the Streeters' first mortgagee. During this seven (7) month period of non-payment, USAA GIC continually represented to the Streeters that the fire loss was "under investigation" without providing explanation

or justification as to any specifics for the delay or what was being investigated.  At no time did USAA GIC claims representatives allege LoanCare was complicit or responsible for the fire loss, or request a sworn proof of loss from either the Streeters or their mortgagee.[1]

Montana law is unique in that it specifically obligates USAA GIC to pay any mortgagee, in this case LoanCare, the stated value amount of the policy within thirty days of the loss, and under no circumstances later than sixty days if additional documentation or examinations under oath had been requested.  USAA GIC made no such requests of LoanCare, yet payments were withheld for over seven (7) months; to the substantial detriment of the Streeters.

There is no genuine issue of material fact.  USAA GIC breached its contractual obligation to timely submit payment to LoanCare as prescribed by Mont. Code Ann. § 33-24-102, as a matter of law.  Therefore, summary judgment as a matter of law is proper on this narrow issue.  What damages stem from USAA GIC's breach remain trial factual issues.

## II.   LEGAL STANDARD

A court must grant summary judgment if the pleadings and supporting

---

[1] The Streeters' attorneys did voluntarily submit a Proof of Loss on behalf of the Streeters without request from USAA GIC on January 31, 2020, and an Amended Proof of Loss on February 5, 2020.

2

documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S.Ct. 2548 (1986). Substantive law determines the facts which are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 91 L. Ed. 202, 106 S.Ct. 2505 (1986). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will have the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 325. The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id*. Further, the party opposing summary judgment may not rest upon mere allegations or denials of the party's pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-88, 89 L. Ed. 538, 106 S.Ct. 1348 (1986).

III. ARGUMENT

    A. **USAA GIC Breached its Contractual Obligations to the Streeters by Failing to Pay LoanCare the Stated Value of the Policy Within 60 Days as Required by Mont. Code Ann. § 33-24-102**

USAA GIC issued a policy of insurance for the Streeters property subject to all the policy's terms, limits, conditions, and exclusions from July 10, 2019 to July

3

10, 2020. Plaintiffs' Statement of Undisputed Facts ¶1. The policy Declarations page expressly identified the First Mortgagee on the Property as United Wholesale Mortgage "its successors and/or assigns." SUF ¶2. LoanCare became the successor mortgagee by virtue of United's assignment of rights on July 2, 2019 SUF ¶3. Therefore, at the time of the fire, LoanCare was the designated mortgagee on the Streeters' property.

The Streeters submitted a large loss fire claim with USAA GIC on or around July 11 and 12, 2019 after their home was completely destroyed by fire and deemed a "total loss." SUF ¶8. On July 12, 2019, USAA GIC contacted and confirmed with LoanCare that the remaining balance of LoanCare's first mortgage on the residence was $467,519.92; far exceeding the $395,000.00 in policy coverage. SUF ¶9. In other words, USAA GIC confirmed the Streeters' property was significantly underinsured.

For more than sixty years, Montana has been one of only a handful of states to enact a statute that expressly provides that:

> Whenever any policy of insurance is written to insure any improvements upon real property in this state against loss or damage and the property insured is considered to be a total loss, without criminal fault on the part of the insured or the insured's assigns, the amount of insurance written in the policy must be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages.

4

Mont. Code Ann. § 33-24-102; *see Silva v. Fire Ins. Exchange*, 647 F.Supp. 1397, 1401 (D. Mont. 1986).

This legislative enactment is commonly known as a "Valued Policy," or "Stated Value" statute. *Id*. It has been examined by the Montana Supreme Court on more than one occasion and, in every instance, strictly enforced. This is true even where, before the home was destroyed, the owner agreed to sell the home for less than the value stated in the insurance policy. *Musselman v. Mountain West Farm Bureau Mut. Ins. Co.*, 251 Mont. 262, 721 P.2d 303 (1992).

In the absence of criminal fault or fraud, when the insured improvements on real property are considered to be a total loss, the amount of applicable insurance coverage written in the policy contract establishes the true amount of the loss. *Britton v. Farmers Ins. Group (Truck Ins. Exchange)*, 221 Mont. 67 72-73, 721 P.2d 303, 306-07 (1986). This is held to be so conclusively true that the Montana Supreme Court has observed, "it may even obviate a policy requirement of filing a proof of loss." *Id*. Any agreement for a lesser settlement of total loss than the amount of applicable coverage is void as against public policy. *Id*.

In this case, USAA GIC withheld all payments throughout the course of a unreasonably prolonged investigation. USAA GIC has claimed the investigation was reasonable and necessary given the "suspicious nature" of the fire incidents. It

is now known, behind the scenes, USAA GIC was subversively trying to find or create evidence to support a theory that the Streeters intentionally set the July fires. Then–following a criminal conviction of the Streeters for arson–USAA GIC could arguably withhold payment to the Streeters on the grounds that the total loss of the home did not occur "in the absence of criminal fault." This did not occur, as the Streeters have never been convicted or even charged with a crime in relation to the loss. Further, substantial evidence exists that the fires cannot even be classified as incendiary in nature. Brf. in Supp. of Plt.'s First Mtn. *in Limine*, 57-6.

Regardless, even if there had been a criminal conviction to establish "criminal fault" against the Streeters, which there was not, USAA GIC was still required to pay LoanCare within sixty days of the claimed fire loss, as a matter of law, per the conditions of its own Policy. There is no issue of genuine fact in this regard, making summary judgment proper.

> **B.   USAA GIC Was Obligated Under its Policy and Montana Law to Pay the Stated Value to LoanCare Regardless of Any Suspicion or Criminal Fault Attributed to the Streeters**

The narrow issue presented in this motion for summary judgment is the contractual obligation USAA GIC had to pay LoanCare, which held a mortgage upon debt that actually exceeded $395,000.00. SUF ¶9. The obligation is clear and lies in the language of USAA's policy, SUF ¶¶4-6, particularly, within its

6

"Mortgagee Clause".  SUF ¶7.  This clause is, with one significant exception, indistinguishable from the standard insurance industry ("ISO") mortgagee clause. As such, the language included in USAA GIC's policy has been examined by courts on many occasions and is well understood.

> USAA GIC's mortgagee clause provides in pertinent part:
>
> If a mortgagee is named in this policy, any loss payable under Section 1 – LOSSES WE COVER for Dwelling Protection . . . will be paid to the mortgagee and you, as interests appear. * * *
>
> If we deny your claim because you . . . has failed to comply with the terms and conditions of this policy ***that denial shall not apply to a valid claim of the mortgagee***, if the mortgagee:
>
> (a) Promptly notifies us of any change of ownership, occupancy or substantial change in risk of which the mortgagee is aware; and
>
> (b) pays any premium due under this policy on demand if you have neglected to pay the premium; and
>
> (c) Sends to us, within 60 days after our request, a signed, sworn proof of loss...
>
> (d) Submits to examination under oath.

SUF ¶7.  [Emphasis added.]

American jurisprudence holds with uncommon clarity that this standard mortgagee clause "establishes a separate contract between the mortgagee and the insurer." *See Jones v. Wesbanco Bank Parkersburg*, 194 W.Va. 381, 387, 460

S.E.2d 627, 633 (W. Va. 1995). In *Jones*, the West Virginia court concluded, ". . . despite Mr. Jones' conviction of arson, which precluded recovery under the policy, Wesbanco's rights, as the lender under a deed of trust named as mortgagee, are not disturbed." *Id.*

The decision in Jones was carefully examined, and followed, in *Home Savings of America, F.S.B. v. Continental Ins. Co.*, 87 Cal.App.4th 835, 104 Cal.Rptr.2d 790 (2001). Quoting the highly-regarded insurance treatise, *Couch on Insurance*, the *Home Savings* court observed:

> . . . if the policy contains a standard loss payable clause, "the mortgagee has an independent contract with the insurer which cannot be defeated by improper or negligent acts of the mortgagor. Absent any evidence of complicity by the mortgagee, where the mortgage contains a standard or union clause, the policy is not avoided as to the mortgagee by the misconduct of the mortgagor, as in destroying an insured building by burning it, or by otherwise intentionally destroying an insured property." *Id*. at § 65:57, p. 65-82.

4 *Couch on Insurance*, § 65:32, pp. 65-47–65-48; *see* also *Najah v. Scottsdale Ins. Co.*, 230 Cal. App. 4th 125, 135-36, 178 Cal. Rptr. 3d 400, 408-09 (2014).

This expression of the rule has received near universal acceptance. *See* 4 *Couch on Ins.* Section 65:48. Certainly this is true in Montana, where the issue was decided in *Britton, supra*, where Farmers Insurance withheld payment from the mortgagee of property owned by Britton, who it suspected was guilty of arson.

8

The Montana Supreme Court unequivocally held:

> We determine as a matter of law in this case, under the facts, the insurer did not comply with the valued policy statute, section 33-24-102, MCA, particularly with regard to the mortgagee Bank which was entitled to payment ***regardless of any claim of arson against the insured Britton***.

*Britton*, 221 Mont. at 73, 721 P.2d at 307. [Emphasis added.]

Whether or not USAA GIC reasonably suspected the Streeters of criminal fault is irrelevant to the issue of its obligation to pay LoanCare. It must also be noted that USAA GIC conditioned its independent obligation to pay the Streeters' mortgagee upon four (4) requirements, none of which is applicable here. SUF ¶7. Importantly, USAA GIC never undertook to investigate the conduct of LoanCare, or suggested in any way that the mortgagee was complicit in the loss; nor was there any change of ownership in the property. Additionally, all premium and mortgage payments were current and were kept current throughout the course of USAA GIC's investigation, at a personal cost to the Streeters of no less than $15,497.52. SUF ¶10.

USAA GIC's mortgagee clause contains one significant difference from the ISO standard mortgagee clause. This difference appears in Section I–Conditions, Part 12(c), which specifically rejects the standard requirement of submission of a sworn statement in proof of loss. SUF ¶7. In its place, USAA GIC imposes upon

9

itself the burden of requesting a proof of loss, if it deems such documentation necessary. *Id*. If and only if USAA GIC requests a sworn statement in proof of loss, then and only then is the mortgagee required to submit it.

It is undisputed that USAA GIC never requested LoanCare submit a sworn proof of loss or, for that matter, undergo examination under oath. Since none of the conditions upon USAA GIC's obligation to pay LoanCare its policy limit were violated, judgment as a matter of law is proper that the full amount of the stated value policy, $395,000.00, was due and owing upon the total loss of the Streeters' dwelling. **_When_** that payment ought to have been made to LoanCare requires only a simple analysis of other Montana statutes and accepted practices.

    **C.**    **USAA GIC Did Not Timely Pay the Stated Value**

Upon the determination of USAA GIC's obligation to pay stated value, regardless of any suspicion or determination of criminal fault attributed to the Streeters, there is no genuine issue of material fact that USAA GIC violated its obligation to timely make the payment. Montana's insurance code is set forth in Title 33 of the Montana Code Annotated. Chapter 18 of that Title codifies numerous unfair trade practices and dictates many aspects of the insurer's relationship with its insured. Specifically, Mont. Code Ann. § 33-18-232 provides in relevant part:

10

> (1) ***An insurer shall pay or deny a claim within 30 days*** after receipt of a proof of loss unless the insurer makes a reasonable request for additional information or documents in order to evaluate the claim. ***If an insurer makes a reasonable request for additional information or documents, the insurer shall pay or deny the claim within 60 days*** of receiving the proof of loss unless the insurer has notified the insured, the insured's assignee, or the claimant of the reasons for failure to pay the claim in full or unless the insurer has a reasonable belief that insurance fraud has been committed and the insurer has reported the possible insurance fraud to the commissioner. This section does not eliminate an insurer's right to conduct a thorough investigation of all the facts necessary to determine payment of a claim.
>
> (2) If an insurer fails to comply with this section and the insurer is liable for payment of the claim, the insurer shall pay an amount equal to the amount of the claim due plus 10% annual interest calculated from the date on which the claim was due. For purposes of calculating the amount of interest, a claim is considered due 30 days after the insurer's receipt of the proof of loss or 60 days after receipt of the proof of loss if the insurer made a reasonable request for information or documents. Interest payments must be made to the person who receives the claims payment. Interest is payable under this subsection only if the amount of interest due on a claim exceeds $5.

[Emphasis added.]

Our insurance code expressly empowers Montana's Insurance Commissioner (the State Auditor), to impose fines upon insurers that fail to pay claims in full within thirty days as a general course of business. Mont. Code Ann. § 33-22-211. Although, this mandatory disability insurance policy provision is not directly implicated here, these statutes collectively express Montana's understanding of the exterior boundaries of "prompt payment."

In *Lorang v. Fortis Ins. Co.*, 2008 Mont. 12, 192 P.3d 186, the insurance

policy at issue reserved sixty days for reconsideration of any claim.  Addressing this provision, the Supreme Court observed:

> Fortis' reconsideration procedure does not displace the statutory duty to act promptly and in good faith when liability becomes reasonably clear.  As we have observed in the context of the UTPA, "it is axiomatic that laws established for the benefit of the public cannot be contravened by private contract." (citation omitted).
>
> Where an insurer wrongfully denies a claim with the intent of paying only if the claimant presses his or her rights, it acts in bad faith even if payment is ultimately made within sixty days.

*Lorang*, fn. 28.

In this case, no facts have been presented or exist to suggest the slightest suspicion of complicity in the Streeters' fire loss on the part of LoanCare.  Moreover, USAA GIC chose to write its insuring agreement in a manner that placed the responsibility upon USAA GIC to request a sworn proof of loss from the insured mortgagee, if it considered such documentation necessary.  Obviously, USAA GIC did not make this request.  Under these circumstances, there can be no dispute that USAA GIC should have issued full payment of the limits of coverage ($395,000.00) to LoanCare within thirty days, and under no circumstances later than September 10, 2019; sixty days after the mortgaged property was totally destroyed by fire.  USAA GIC did not issue payment to the Streeters or LoanCare for the stated value of $395,000.00 until February 18, 2020, in clear violation of

12

Montana law and practices.  SUF ¶11.  Judgment as a matter of law is proper in this regard.

## IV.   CONCLUSION

For the reasons stated herein, the Streeters respectfully request that the Court grant their motion for summary judgment and be allowed to present to the jury that USAA GIC breached its contractual obligations under Mont. Code Ann. § 33-24-102 by refusing to pay stated value within sixty days of the total dwelling loss.

DATED this 19th day of July, 2022.

By:     /s/ Michael P. Sherwood

MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
   *Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

The undersigned does hereby certify that pursuant to Local Rule 7.1(d)(2), the foregoing document:

☐   Does not exceed 6500 words (briefs in support of motion and response briefs) or 3250 words (reply briefs).

☐   This Brief contains 3,029 words.

DATED this 19th day of July, 2022.

>   By: /s/ Michael P. Sherwood
>
>   MILODRAGOVICH, DALE
>   & STEINBRENNER, P.C.
>       *Attorneys for Plaintiffs*