IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DAVID and KATJA STREETER, | CV 20–188–M–DLC |
| Plaintiffs, | |
| vs. | ORDER |
| USAA GENERAL INDEMNITY COMPANY, and JOHN DOES 1-10, | |
| Defendants. | |

Before the Court is United States Magistrate Judge Kathleen L. DeSoto's Findings and Recommendation concerning Defendant USAA General Indemnity Company's ("USAA") Motion for Summary Judgment and Plaintiffs David and Katja Streeter's Cross-Motion for Partial Summary Judgment. (Doc. 146.) The Streeters timely filed specific objections to the Findings and Recommendation. (Doc. 151.) Consequently, the Streeters are entitled to *de novo* review of those findings and recommendations to which they object. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Absent objection, this Court reviews a magistrate's findings and recommendations for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*,

1

235 F.3d 422, 427 (9th Cir. 2000).

## BACKGROUND

On or about July 11 and July 12, 2019, two fires occurred at the Streeters' home.  (Doc. 16 at 2, ¶¶ 4, 6.)  At the time of the fires, the Streeters were insured under a homeowners policy issued by USAA (the "Policy").  (*Id.* at 2, ¶¶ 3, 5.)  The Policy includes coverage against sudden and accidental loss to the insured's dwelling, other structures, and tangible personal property with some exclusions, such as loss caused by intentional acts by the insured.  (Docs. 80 at 7; 66-1 at 20, 31, 35.)  The Policy provided "Dwelling" coverage in the amount of $395,000, "Other Structure" coverage in the amount of $39,500, "Personal Property" coverage in the amount of $197,500, and unlimited "Loss of Use" coverage for up to 12 months.  (Doc. 66-1 at 4.)  The Policy also contains conditions requiring that the insured "cooperate with [USAA] in the investigation of a claim" and "provide [USAA] with records and documents [USAA] request[s]."  (*Id.* at 38.)

The Streeters notified USAA of the fires and submitted a claim under the Policy for the total loss of their home.  (Docs. 16 at 2, ¶¶ 4, 6; 80 at 5, ¶ 8.)  The Streeters participated in an in-person recorded interview with a USAA claims representative on July 15, 2019, and explained that they had been camping at the time of the first fire and in a hotel at the time of the second fire.  (Docs. 16 at 2, ¶ 7; 78-3 at 2.)  The Streeters also participated in an interview with a cause and

origin expert from USAA.  (Doc. 78 at 12, ¶ 12.)  During an interview and
subsequent email exchange with a USAA investigator on July 18, 2019, the
Streeters were informed that USAA would be requesting additional information as
part of its claim investigation, including mortgage refinance records, proof of
income, and certain cell phone data for the period from July 8 to July 15, 2019.
(Docs. 78-1 at 2; 78-2 at 1; 178-3 at 4.)  The Streeters were informed that the data
pulls from their cell phones would be conducted by a third-party contractor, One
Source Discovery ("One Source").  (Doc. 78-2 at 1.)  The USAA investigator also
provided the Streeters with a preservation letter asking for their "cooperation in
preserving electronically stored information that may contain information relevant
to [their] claim" and citing the Policy's cooperation and document disclosure
conditions.  (Doc. 61-2 at 3.)

    Shortly after this request, the Streeters provided USAA with some of the
requested material, including paystubs, mortgage records, and some Verizon
records with call and text data from their cell phones for the period of June 14 to
July 13, 2019.  (Docs. 78-3 at 5; 78-2 at 1; 61-6 at 7–24.)  On August 1, 2019, the
Streeters met with a One Source data pull technician.  (Doc. 61 at 3.)  During that
meeting, the Streeters presented the technician with an authorization letter that
limited what data USAA could access.  (*Id.*)  That authorization stated:

        In the phone conversations with USAA it was requested that Katja and
        I make our phones available for inspection to a third party contracted

3

by USAA. USAA has asked us for text messages, phone logs, GPS
locations, search history, and emails from 7-8-19 until 7-15-19. I will
grant USAA their request for information for those items.

I do not grant USAA, or any third-party contractor for said company,
to access or view personal files, pictures, notes, or any other technical
data from any of the cell phones owned by David or Katja Streeter or
from the iPad that will be inspected. If USAA, or its representatives,
access these files or data types I will deem it a violation of said
agreements and seek remedy.

(Doc. 61-3.)

USAA was advised of the authorization letter and agreed to allow One

Source's data pull to continue without allowing USAA access to the data until an

agreement could be reached with the Streeters.  (Doc. 78-3 at 7.)  USAA ultimately

agreed "to only request from OneSource [sic] Discovery the file types which [the

Streeters] indicated in the [authorization letter] . . . , with the stipulation that

[USAA] may request access to additional files and/or data at a future time if it

deems necessary to do so in furtherance of the investigation."  (Doc. 61-4 at 2.)

USAA received the authorized extraction reports from One Source on

August 9, 2019.  (Doc. 78-4 at 4.)  After receiving the cell phone data from One

Source, USAA's investigator noted that David Streeter's call log was missing calls

from July 10 to July 12, 2019, that appeared in the Verizon records the Streeters

had previously provided.  (Docs. 61-5 at 1; 61-6 at 11–12.)  USAA contacted One

Source about the missing call data and One Source informed USAA that expanded

scope authorization from the Streeters would be required in order for One Source

to "check for other temporal data in the timeframe" or "review if anything is amiss," such as "factory reset, data hiding, etc." (Doc. 61-5 at 1.)  One Source could not "even confirm or deny the very existence of other data categories within the 7/10-7/12 time frame" without expanded scope authorization. (*Id.*)

On August 19, 2019, USAA contacted the Streeters regarding the missing cell phone data and informed them that, "[i]n an effort to determine the reason for absence of this data, [USAA was] requesting an expansion to the scope for One Source Discovery to research." (Doc. 61-7 at 2.)  USAA specified that they were seeking expanded authorization to:

- Review communication activity including voicemail and third party application
- Voicemail records for both phones from 07/08/19-07/15/19
- Examine for any and all indicators of factory reset, data hiding or similar[.]

(*Id.*)  The same day, the Streeters authorized One Source "to look into any communication apps such as Whats App [sic] and Messenger" and "voicemail from the devices that were downloaded," but did not approve expanded scope authorization for examining "any and all indicators of factory reset, data hiding or similar." (Doc. 61-8 at 1.)  Then, on August 26, the Streeters informed USAA that they were "suspending the right for One Source Solutions to share any further personal information with USAA." (Doc. 61-9 at 1.)  The Streeters went on to request "a statement from USAA of exactly why, to the finest detail, why [sic]

USAA believes such information will assist them in their investigation." (*Id.*)

On July 31, 2019, USAA issued an advance payment to the Streeters in the amount of $5,000 under "Personal Property" coverage. (Doc. 16 at 3, ¶ 10.) In February 2020, USAA paid the Streeters the $395,000 policy limit for "Dwelling" coverage and $143,125 under the Policy's "Personal Property" coverage. (*Id.* ¶ 12.) In March 2020, USAA issued additional payments of $20,893.63 under the Policy's "Excess Debris Removal, Trees, Shrubs, and Other Plants" coverage, $11,677.20 under "Other Structures" coverage, and $33,357.85 under "Loss of Use" coverage. (*Id.* ¶¶ 13–15.) In May 2020, USAA paid an additional $35,275.04 under "Personal Property" coverage. (*Id.* ¶ 16.) In total, USAA paid the Streeters approximately $640,000 for their claim.

The Streeters filed their Complaint (Doc. 1) in December 2020 and an Amended Complaint (Doc. 33) in August 2021. The Streeters allege breach of contract and violations of Montana's Unfair Trade Practices Act ("UTPA"). (*Id.* at 11–14, ¶¶ 49–61.) USAA's Answer to the Amended Complaint raised several affirmative and other defenses, including that the Streeters' "claims may be barred by their failure to comply with one or more conditions precedent to recovery of the benefits or remedies they seek in connection with the subject matter of their claim, including the duty to cooperate under the policy." (Doc. 34 at 13, ¶ 6.)

USAA did not gain access to the additional cell phone data requested from

6

the Streeters until after litigation began.  (*See* Doc. 61 at 4, ¶ 14.)  USAA then

learned that data had been deleted from the Streeters' cell phones and, based on

their investigation into this deleted data, determined that the loss was intentionally

caused by the Streeters.  (*See* Docs. 60 at 5, 13–14; 51 at 5–12.)  USAA

subsequently filed an Amended Answer asserting additional defenses based on this

new evidence, including breach of the Policy's concealment-and-misrepresentation

and fraud provisions and the intentional-loss exclusion.  (Doc. 105.)

In their Motion for Summary Judgment (Doc. 59), USAA argues that

summary judgment is appropriate for all of the Streeters' claims for several

reasons.  First, USAA argues that the Streeters failed to comply with the Policy's

cooperation and record-disclosure provisions.  (*Id.* at 1.)  Second, USAA argues

that the Streeters' "inability-to-rebuild" claim fails as a matter of law under the

Policy's terms "because the timing of [USAA's] payment did not prevent [the

Streeters] from rebuilding."  (*Id.* at 2.)  Finally, USAA argues that the Streeters'

"claims for alleged UTPA violations . . . and for declaratory judgment fail as a

matter of law under the UTPA."  (*Id.*)  The Streeters have cross-moved for

summary judgment on their breach of contract claim under Montana law.  (Doc. 64

at 2.)

Judge DeSoto recommends that this Court grant USAA's motion and deny

the Streeters' cross-motion.  (Doc. 146 at 1.)  Judge DeSoto determined that the

Streeters had violated the Policy's cooperation provision "by limiting and then entirely revoking [USAA's] authorization to access electronic records during the claim investigation," (*id.* at 17), which actually prejudiced USAA's "ability to investigate the claim in real time," (*id.* at 26). Thus, "the Streeters' failure to cooperate with [USAA's] claim investigation precludes coverage under the Policy and is fatal to their breach of contract claim." (*Id.* (citing *Seymour v. Safeco Ins. Co. of Ill.*, CV 13–49–BU–DLC–RWA, 2014 WL 12591708, at *2 (D. Mont. July 24, 2014)).) Judge DeSoto also found that, "[a]bsent coverage, the Streeters' claims for punitive damages, attorney fees, and declaratory judgment also fail." (*Id.* at 27.)

The Streeters timely filed objections to the Findings and Recommendation, which can be grouped into four categories. First, the Streeters argue that Judge DeSoto erred in concluding that the Streeters had failed to substantially cooperate with USAA's investigation. (Doc. 151 at 8–16, 18–25.) Second, that Judge DeSoto erred in concluding that any noncooperation resulted in actual prejudice. (*Id.* at 17, 27–29.) Third, the Streeters attack the "noncooperation" standard utilized by Judge DeSoto and further argue that any alleged noncooperation on their part does not obviate coverage absent notice from USAA and a chance to remedy. (*Id.* at 6–7, 25–27.) Fourth, that Judge DeSoto erred in determining that a breach of the cooperation provision was fatal to all of the Streeters' claims. (*Id.* at

29–30.)  The Streeters also "object to the recommendation that [their] cross-motion for partial summary judgment and all other pending motions be denied as moot," (*id.* at 30); however, this argument is premised on this Court rejecting the Findings and Recommendation for the aforementioned reasons.

The Court will address each of the Streeters' specific objections and review the relevant findings and recommendations *de novo*.  First, the Court will address the appropriate standard for determining "noncooperation" under a policy such as the one at issue here.  Second, the Court will determine whether the Streeters' conduct constituted "noncooperation" under that standard, thereby obviating coverage in this case.  Third, the Court will address whether there was any requirement for USAA to provide notice or a chance to remedy.  Finally, the Court will address whether breach of the cooperation provision is fatal to all of the Streeters' claims.

## DISCUSSION

This Court can resolve an issue summarily if "there is no genuine dispute as to any material fact" and the prevailing party is "entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine when there is sufficient evidence for a reasonable factfinder to return a verdict for the other party.  *Id.*  If the moving party meets its initial

responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## I.   Noncooperation Standard

This case is before the Court under diversity jurisdiction; accordingly, the Court applies the substantive law of Montana, the forum state.  *See Med. Lab'y Mgmt. Consultants v. Am. Broadcasting Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).  The Montana Supreme Court has not addressed whether, and under what circumstances, an insured's failure to cooperate with a claim investigation will preclude coverage where the applicable policy contains a cooperation provision. Therefore, this Court "must predict how the state's highest court would decide the question."  *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007).

First, the Court looks to the Montana Supreme Court's decision in *Steadele v. Colony Insurance Company*.  260 P.3d 145 (Mont. 2011).  In that case, the court held that an insured's failure to comply with their policy's notice provision constituted a failure to meet a condition precedent and barred recovery.  *Id.* at 150. The court reasoned that such failures interfere with an insurer's "opportunity to defend its interests and to prevent or mitigate adverse judgments."  *Id.*  This Court has applied *Steadele*'s holding and reasoning to subsequent diversity actions involving failure to provide timely notice of a claim.  *See, e.g.*, *Contractors*

10

*Bonding and Ins. Co. v. Sandrock*, 321 F. Supp. 3d 1205, 1211–12 (D. Mont. 2018).

Next, the Court looks to another of its decisions in an insurance diversity action, *Seymour v. Safeco Insurance Company of Illinois*, in which an insured "failed to cooperate with [the insurer]" by not "providing [the insurer] with a written estimate to support their request for additional payment." 2014 WL 12591708, at *8. The Court held that this noncooperation "preclude[d] any additional recovery under the [p]olicy," and therefore, the plaintiff's breach of contract claim failed. *Id.* The Court again reasoned that "[a]n insured's failure to provide documents requested by the insurer . . . impairs an insurer's ability to conduct a legitimate claim investigation to determine whether coverage exists." *Id.* (citation omitted).

These cases provide support for the conclusion that, under Montana law, noncooperation with the terms of an insured's policy can preclude coverage. However, the Court must look to decisions from other jurisdictions to determine the appropriate standard for whether noncooperation has occurred. USAA cites to several decisions that provide guidance. From these cases, the Court concludes that the applicable standard for determining noncooperation is: (1) the insured failed to cooperate in a material and substantial respect, (2) with an insurer's reasonable and material request, (3) thereby causing actual prejudice to the

insurer's ability to evaluate and investigate a claim.  *See Hall v. Allstate Fire &*
*Cas. Ins. Co.*, 20 F.4th 1319, 1323 (10th Cir. 2021) ("For an insurer to assert the
affirmative defense of failure to cooperate, it must show: (1) the insured fails to
cooperate with the insurer in some material and substantial respect; and (2) this
failure to cooperate materially and substantially disadvantaged the insurer."); *Tran*
*v. State Farm Fire & Cas. Co.*, 961 P.2d 358, 363 (Wash. 1998) ("The only
limitation on the requirement that insureds cooperate with the insurer's
investigation is that the insurer's requests for information must be material to the
circumstances giving rise to liability on its part."); *see also Habecker v. Peerless*
*Ins. Co.*, No. 1:07–CV–0196, 2008 WL 4922529, at *4 (M.D. Penn. Nov. 14,
2008) ("An insured's failure to cooperate excuses an insurer's coverage obligations
if the breach is material and prejudicial to the insurer's interest.").  The insurer has
the burden of proving noncooperation.  *See Tran*, 961 P.2d at 365.

### A. Substantial Cooperation

The Streeters failed to substantially cooperate with USAA's investigation.
The Policy required that the Streeters provide USAA with the records and
documents USAA requests, as often as USAA reasonably requires.  (Doc. 61-1 at
38.)  As discussed above, the Streeters did initially comply with USAA's request
for information by providing mortgage refinance records, proof of income, and
certain cell phone data.  (*See* Docs. 78-3 at 5; 78-2 at 1; 61-6 at 7–24.)  However,

when USAA requested additional data from the Streeters' cell phones after

discovering a discrepancy between the One Source data pull and the Verizon cell

phone records, the Streeters declined to provide USAA with access to "any and all

indications of factory resets, data hiding or similar." (Docs. 61-7 at 2; 61-8 at 1.)

The Streeters then entirely revoked USAA's access to their electronic records held

by One Source. (Doc. 61-9 at 1.) Furthermore, the evidence indicates that the

Streeters deleted data from their cell phones after filing their claim, as evidenced

by the missing call records, despite the preservation letter provided by USAA.

(Doc. 61-2 at 3.)

     In their objections, the Streeters argue that their initial cooperation raises a

genuine issue of material fact as to whether they substantially cooperated. (Doc.

151 at 11.) In support of this argument, the Streeters point to their early

cooperation with USAA, including participation in a recorded interview and

provision of requested documents. (*Id.* at 9.) The Streeters also point to the fact

that USAA agreed to the parameters of their authorization letter, with the

stipulation that USAA could request access to additional files or data. (*Id.*)

Finally, the Streeters argue that they never revoked USAA's access to the data held

by One Source, but only "suspended" access until David Streeter could "speak

with the adjuster's supervisor" and until USAA provided a statement "as to why it

believe[d] the additional information requested [would] assist in its investigation."

13

(*Id.* at 10.)

As support for their argument, the Streeters offer new evidence in the form of correspondence sent from their previous attorney, Mathew Hutchison, to USAA in September, October, and December 2019.  (Docs. 150-1; 150-2; 150-3; 150-4.) In these letters, Mr. Hutchinson requested that USAA comply with requests for information and documents, (Doc. 150-1 at 1–2), "provide all pertinent facts, documents and/or insurance policy provisions upon which USAA . . . believes supports in any way . . . its basis to contest the Streeters' claim," (Doc. 150-2 at 2), provide "information that justifies its refusal to indemnify its insured," (Doc. 150-3 at 1), and "provide [the Streeters] with all coverage benefits provided under their insurance policy," (Doc. 150-4 at 1).  These letters, which were not previously provided to the Court, are now offered as evidence that the Streeters never actually revoked USAA's access to their electronic records, but that USAA "failed to communicate regarding the information requested."  (Doc. 151 at 11.)

As an initial matter, this Court need not consider "evidence presented for the first time in a party's objection to a magistrate judge's recommendation."  *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000).  USAA urges this Court not to consider this new evidence, (Doc. 153 at 13–15), but ultimately the Court finds that the new evidence has no effect on its analysis.

Initial compliance with USAA's requests does not extinguish the Policy's

14

cooperation requirement.  *See, e.g.*, *Habecker*, 2008 WL 4922529 at *5 (stating

"despite the plaintiffs' initial assistance, no reasonable jury could have concluded

that the plaintiffs had discharged their duty to cooperate").  The question is

whether the insured fails to cooperate in *some material and substantial respect*.

This standard could be met by one or many refusals to provide requested

information.  Here, the failure to provide USAA access to the requested cell phone

data after a discrepancy was identified by USAA's investigator is both material

and substantial, as was the deletion of the data.

Despite the Streeters' claims to the contrary, the record supports the

conclusion that USAA's authorization to access the requested data from One

Source was *revoked*.  (*See* Hr'g Tr. 67:20–68:2, Doc. 149 at 67–68.)  This

revocation occurred before USAA had received the expanded extraction reports it

needed to continue its investigation.  Moreover, the Policy's cooperation provision

does not demand that the insurer comply with conditions imposed by the insured

before gaining access to requested information, such as the requests for

information made by Mr. Hutchinson in the newly offered letters.  The Streeters'

arguments to this effect essentially turn the cooperation provision on its head,

imposing the obligation on the insurer to cooperate with requests of the insured.

The cooperation provision does not operate in this fashion.  Rather, an insured who

feels that an insurer is not complying with their obligations under the Policy has

15

other remedies available, such as a bad faith claim.

In conclusion, the Streeters failed to substantially cooperate with USAA's request for information and no reasonable juror could conclude otherwise.

## B. Reasonable and Material Request

USAA's request was reasonable and material to their investigation. Information is material if it "concerns a subject relevant and germane to the insurer's investigation . . . at the time the inquiry was made." *Tran*, 961 P.2d at 363 (internal quotation omitted).

Here, the information requested directly pertained to USAA's investigation into the cause of the fires that damaged the Streeters' property.  As explained above, USAA requested an expanded data pull after identifying discrepancies between the initial cell phone data provided by the Streeters and the data provided by One Source.  This missing data corresponded with the days of the fires. Furthermore, the Streeters had been made aware of their obligation to provide requested information, per the terms of the Policy, and had agreed that USAA may request access to additional files and/or data at a future time if it deemed it necessary to do so in furtherance of the investigation.  (*See* Docs. 61-2 at 3; 61-4 at 2.)

The Streeters do not directly object to Judge DeSoto's conclusion that the information sought by USAA was reasonable and material.  Accordingly, the Court

16

is satisfied that there is no clear error in the Findings and Recommendation regarding the reasonableness and materiality of USAA's request.

## C. Actual Prejudice

The Streeters' failure to cooperate actually prejudiced USAA's investigation. Actual prejudice requires "affirmative proof of an advantage lost or disadvantage suffered as a result of [the failure to cooperate], which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability." *Tran*, 961 P.2d at 365; *see also Seymour*, 2014 WL 12545877, at *8 (explaining that an insurer is prejudiced where "the insured's intransigence prevents the insurer from completing a legitimate investigation to determined whether it should provide coverage"); *Habecker*, 2008 WL 4922529, at *6 (finding that an insured's refusal to authorize access to relevant files held by a third-party "deprived [the insurer] of relevant information . . . thereby prejudicing it [sic] assessment of covered claims"). Undue delay may also constitute prejudice. *See McCoy v. Travelers Indem. Co. of Am.*, No. 4:CV-00-2246, 2002 U.S. Dist. LEXIS 27431, at *16 (M.D. Pa. Feb. 8, 2002) ("An insurer is entitled to receive information relevant to a loss promptly and while the information is still fresh.").

The Streeters' refusal to provide USAA access to the records needed to fully investigate the discrepancy in the cell phone data impeded USAA's investigation

17

and prejudiced its ability to evaluate coverage.  Moreover, by revoking all

authorization for One Source to provide USAA with any further electronic data,

the Streeters prevented USAA from investigating the claim until after the Streeters

were paid under the Policy.  *See Tran*, 961 P.2d at 366 (discussing the potential for

prejudice where an insurer pays a claim, but the insured impeded the insurer's

ability to complete its investigation and determine whether the claim was

fraudulent).

In their objections, the Streeters contend that there is a genuine issue of

material fact as to whether USAA was prejudiced or inhibited in fully investigating

the claim and argue that such determinations should be left for the jury.  (Doc. 151

at 27 (citing *Field v. State Farm Mut. Auto. Ins. Co.*, No. C13–5267–BHS, 2014

WL 2765224, at *2 (W.D. Wash. June 18, 2014) ("Prejudice is an issue of fact that

will seldom be established as a matter of law.")).) The Streeters point to USAA's

"failure to follow-up on the Streeters' request for communication regarding the

scope of the supplemental request for electronic information" as evidence that the

investigation was not inhibited by the Streeters' actions.  (*Id.* at 17.)  The Streeters

also argue that a determination of actual prejudice cannot be made without first

determining their culpability for the fires.  (*Id.* at 28–29.)

The Streeters' objections have no merit.  Prejudice is not determined by the

actual content of the records sought—i.e., proof of culpability—but whether the

insurer's ability to investigate was impaired.  *See Seymour*, 2014 WL 12545877, at *8 (explaining that the prejudice suffered is the inability to complete a legitimate investigate into a claim); *Habecker*, 2008 WL 4922529, at *6 (explaining that an insurer suffers prejudice when put "into the untenable position of either denying coverage or paying the claim without the means to investigate its validity").  Here, USAA's ability to investigate the claim was inhibited by the Streeters' noncooperation and therefore USAA suffered actual prejudice.  Although the question of prejudice may be left to the jury, the Court finds that no reasonable juror could conclude that USAA was not prejudiced by the Streeters' failure to cooperate.

Although the Streeters claim a factual dispute remains as to why the initial extraction reports obtained by USAA are not in the claim file, (Doc. 151 at 15–16), this "dispute" is irrelevant to the material facts.  *Anderson*, 477 U.S. at 247–48 (explaining that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").  For the foregoing reasons, USAA met its burden of proving noncooperation under the terms of the Policy.

## II.   Notice Requirement

The Streeters contend that USAA was under an obligation to notify them of

their noncompliance with the Policy and provide them an opportunity to cure. (Doc. 151 at 25.)  As support for this argument, the Streeters point to cases cited in the Findings and Recommendation, such as *Seymour*, *Tran*, and *Habecker*,[1] where the insured was warned about their failure to comply.  (*Id.* at 22–25.)  The Streeters further argue that USAA has "waived and [is] estopped from asserting any coverage defense not communicated to [the Streeters] in a timely denial letter" before payment of the claim.  (*Id.* at 26 (citing *Time Oil Co. v. Cigna Prop. & Cas. Ins. Co.*, 734 F. Supp. 1400, 1418 (W.D. Wash. May 23, 1990); *Portal Pipe Line Co. v. Stonewall Ins. Co.*, 845 P.2d 746, 750 (Mont. 1993)).)

The Streeters' argument is an attempt to shift the Policy's cooperation requirement onto USAA; however, the Streeters lack support for this proposition. The elements of noncooperation, as discussed above, do not include a requirement that an insurer provide notice of noncompliance with the terms of the Policy in order to actually enforce it.  Although some degree of warning or notice may have occurred in the cases cited by the Streeters, there is no indication that those courts considered notice to be a necessary element to a noncooperation defense. Moreover, the Streeters were put on notice of the Policy's cooperation provision at

---

[1] In *Seymour*, the insurer "advised [the insured] that it needed a written estimate supporting her request for additional payment before it would consider paying anything further."  2014 WL 12545877, at *7.  In *Tran*, the insurer attempted to contact the insured multiple times and warned the insured's attorney that the claim could be denied if he failed to provide the requested information.  961 P.2d at 361.  In *Habecker*, the insureds were "repeatedly reminded" by their insurer of the importance of the requested information.  2008 WL 4922529, at *6.

20

the outset of the claims process.

Additionally, payment on a claim does not waive the noncooperation defense.  USAA raised the defense of noncooperation in its first Answer, (Doc. 12 at 15, ¶ 5), and therefore did not waive the defense.  As discussed in *Tran*, noncooperation forces an insurer into the difficult position of having to pay a claim, which may be fraudulent, or face potential claims of bad faith or violation of the Consumer Protection Act.  961 P.2d at 366.  Therefore, it is against reason to conclude that an insurer is estopped from asserting noncooperation as a defense after payment has been made on the claim.

For the reasons above, the Streeters' arguments regarding a notice requirement and estoppel are unsuccessful.

## III.    Effect of Noncooperation

The Streeters argue that violation of the Policy's cooperation provision "is not fatal to [their] breach of contract or other claims" because failure to cooperate only constitutes a breach of a condition of forfeiture, not a breach of a condition precedent.  (Doc. 151 at 29.)  According to the Streeters, "dismissal of a claim for failure to meet a condition precedent is proper when there has not yet been a decision to accept the claim as a valid and covered claim."  (*Id.*)  But, where the insurer has paid a claim, "to defeat coverage there must be a determination that the insured 'has nullified the coverage' with some action."  (*Id.* at 30.)  The Streeters

21

allege that the nullifying action here is arson, "which has not, and cannot, be established."  (*Id.*)  The Streeters also point to the fact that "any 'missing' electronic information has been produced" so "retroactive dismissal of the entire claim on this basis would be in error."  (*Id.*)

As already discussed above, the Streeters' premise is flawed.  The non-cooperation defense is available even where a claim has been paid.  The rationale behind the defense is that an insurer is prevented from properly investigating a claim where an insured has failed to cooperate with the collection and sharing of information.  It is not the content of the information that determines whether noncooperation has caused prejudice, but whether the insurer's ability to investigate was impaired.

Providing the requested information after-the-fact—after payments have been made and litigation has been initiated—is not sufficient to cure the effects of noncooperation.  As already discussed, the Policy's cooperation provision places a condition on the insured, not the insurer, to cooperate in the collection of information.  Failure to comply with the cooperation provision is sufficient grounds for repudiation of a claim, per the terms of the Policy.  Accordingly, summary judgment should be granted in favor of USAA on all of the Streeters' claims.

Reviewing the remainder of Judge DeSoto's Findings and Recommendation

for clear error, the Court finds none.

Accordingly, IT IS ORDERED that Judge DeSoto's Findings and Recommendation (Doc. 146) is ADOPTED in full.

IT IS FURTHER ORDERED that USAA's Motion for Summary Judgment (Doc. 59) is GRANTED.

IT IS FURTHER ORDERED that the Streeters' Cross-Motion for Partial Summary Judgment (Doc. 64) and all other pending motions (Docs. 55, 68, 73, 82, 84, 87, 89, 91, 93, 95, 97, 119, 121, 123, 134, 146) are DENIED as moot.

DATED this 25th day of January, 2023.

Dana L. Christensen, District Judge
United States District Court